JANE COPLEY, administratrix, *vs.* NEW HAVEN AND NORTH-AMPTON COMPANY.

Hampden.   September 25. — October 18, 1883.

In an action against a railroad corporation, on the St. of 1881, *c.* 199, § 2, for running over and killing a girl sixteen years old, at a place where a highway crossed a railroad at grade, there was contradictory evidence upon the question of the neglect of the defendant to give the signals required by law, but it was conceded that the head-light of the locomotive engine was burning, that the girl was familiar with the locality, that the track was visible for nearly a mile, and that, at the time, it was not dark, but twilight. The plaintiff's evidence tended to show that, when the locomotive engine was within from three to six rods of the crossing, the whistle was blown twice, and the girl, who was then within a few feet of the track, quickened her pace and ran upon the track, and was killed. *Held,* that the burden of proof was upon the defendant to show that the girl was guilty of gross or wilful negligence. *Held, also,* that the court could not say, as matter of law, that attempting to cross the track, under such circumstances, was gross or wilful negligence.

TORT, under the St. of 1881, *c.* 199, § 2, for causing the death of the plaintiff's intestate, on June 30, 1881, at a place in Westfield, where the defendant's railroad crossed a highway at grade. Trial in the Superior Court, before *Pitman,* J., who allowed a bill of exceptions, in substance as follows:

The plaintiff's intestate, a girl sixteen years of age, was killed by a locomotive engine at the time and place alleged. There was contradictory evidence upon the question of the neglect of the defendant corporation to give the signals required by law; but there was no dispute that, when the train of the defendant, hereinafter referred to, was within from three to six rods of the crossing, the alarm-whistle of the engine was blown twice, and that the girl was then travelling in the highway within a few feet of the tracks of the corporation. She knew the locality, and had for a long time been in the habit of passing over the railroad of the defendant at this crossing. The accident occurred about half-past eight o'clock, in the evening of June 30, 1881; it was not 'dark, but twilight, and a person could easily be recognized for a considerable distance. The railroad track was plainly visible for nearly a mile, nearly all the way from the house of Miss Pratt, hereafter mentioned, to the railroad track. This house was about twelve rods from the crossing. The jury took a view of the premises.

H. F. Avery, in behalf of the plaintiff, testified that he saw the girl approaching the crossing; that she was walking at her usual gait until within three or four feet of the railroad tracks, when the locomotive engine gave the " danger-whistle," and the girl quickened her pace and ran, and went upon the tracks; that when the train whistled it was within two or three rods of the crossing; that he did not hear any other whistle; and that the head-light was burning on the locomotive engine.

Simon Dolan, a witness for the defendant, testified that he saw the girl leave Miss Pratt's house; that, when she was about half-way from the house to the track, the train gave a long whistle at the whistling-post; that the girl then looked towards the train coming, and quickened her pace; that, when the train got within seven or eight rails of her, it gave two short whistles; and that she looked at the train again just before going upon the tracks.

Miss Pratt, a witness for the defendant, testified that after the girl left her house she heard a prolonged whistle; that the girl was then three to five rods from the house; that the girl turned her head and looked towards the train, and at once quickened her pace very much; that the witness went to another

part of the house and heard two or three danger-whistles; that she heard the train coming, and judged by the noise it was coming faster than usual.

Michael Burke, a witness for the defendant, testified as follows: I was engineer. I saw the girl about ten to fifteen feet from the track; she was running. I was then fifty to seventy-five feet from the crossing. I gave danger-whistles, put on air-brake, and reversed the engine.

Upon this evidence, which was all the evidence in the case bearing upon the conduct and acts of the deceased, and all that was given as to the way the accident happened, although there was other evidence, not reported, upon which the jury might find that the signals required by law were not given, the defendant asked the judge to rule as follows:

"1. Upon all the evidence in the case, the plaintiff cannot recover. 2. If the jury believe that the deceased knew the train was coming at great speed, or might have known it by the exercise of proper diligence, and attempted to cross the track in front of the engine when the engine was within from three to six rods of her, it was gross negligence. 3. If a long and continuous whistle was given at the whistling-post, eighty rods from the crossing, and the deceased heard it, and knew the train was coming across the road, and she attempted to pass in the road across the tracks, before the train, it was gross negligence. 4. If the deceased heard the whistles of 'down brakes,' otherwise called 'danger-whistles,' and then was within a few feet of the track, and the engine was within from three to six rods of her, coming at full speed, in plain view, and she attempted to pass across the tracks, it was gross negligence. 5. If she was grossly negligent, and such negligence contributed to the injury, she cannot recover. 6. If the deceased was not in the exercise of ordinary care, she was grossly negligent. 7. If the deceased knew the train was coming at great speed, and was about to cross the road, and saw or might have seen by the ordinary use of her senses that it was within six rods of the crossing, and she attempted to cross, she was guilty of gross negligence, whether any signals were given by the defendant or not. 8. If the collision caused the instant death of the deceased, the plaintiff cannot recover unless the deceased was in the exercise of due diligence."

` The judge refused so to rule, except as to the fifth request, which he gave, and instructed the jury as follows:

" If the jury believe that the deceased knew that the train was coming at great speed, and knew that the engine was within from three to six rods of her, and was able at the time to appreciate and realize substantially the distances and the situation, or would have had such knowledge and appreciation if she had not been grossly inattentive or negligent, then it would be gross negligence for her to attempt to cross the track in front of the engine. And, upon such facts, it would be such negligence, whether any signals were given by the defendant or not. Also, if the deceased heard the whistles of ' down brakes,' otherwise called ' danger-whistles,' and then was within a few feet of the track, and the engine was within from three to six rods of her, coming at full speed in plain view, and the deceased was, at the time, able to understand and realize, substantially, the distances and situation, or would have had such knowledge and appreciation but for her gross negligence and inattention, then, under such circumstances, for her to attempt to cross the track in front of the engine would be gross negligence."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*G. M. Stearns & H. B. Stevens,* for the defendant.

*H. W. Ely,* for the plaintiff.

C. ALLEN, J. A majority of the court is of opinion that this case was properly submitted to the jury, and under proper instructions. There was contradictory evidence upon the question whether the bell was rung or the whistle sounded at a distance of eighty rods from the crossing, as required by the St. of 1874, *c.* 372, § 123. It may have been found as a fact that no signal was given until the engine was within from three to six rods of the crossing, or even less. There was evidence tending to show that the deceased was then within three or four feet of the track, and that two sharp danger-whistles were then given, and that she started to run across the track. She had a right to rely, to some extent, upon the signals of warning which the law required to be given. *Gaynor* v. *Old Colony & Newport Railway,* 100 Mass. 208. *Chaffee* v. *Boston & Lowell Railroad,* 104 Mass. 108.

The want of such signals may have led to her being in that situation. This is a matter of inference. Finding herself there, in the evening, close upon the track, with no previous warning, with a train approaching at great speed, and already within from three to six rods of her, and perhaps even less, startled by the sudden and sharp whistles, seeing a flashing head-light, with no time to reflect, we cannot say, as matter of law, that the burden which is imposed by statute on the defendant of showing, in addition to the mere want of ordinary care, such gross or wilful negligence as is contemplated by the St. of 1881, c. 199, § 2, was maintained by proving that she attempted to cross the track under these circumstances. Under this statute, it was not sufficient for the defendant to show merely a want of ordinary care on her part. A clear distinction is implied by the terms of the statute, under which gross or wilful negligence means something .more. There was no error in allowing the jury to consider whether she was able at the time to appreciate and realize substantially the distances and the situation. The circumstances were such that we cannot say that the jury were not authorized to find, either that she was likely to be confused and bewildered, or to be misled as to the distance of the engine from her.

*Exceptions overruled.*