MARY SULLIVAN *vs.* NEW YORK, NEW HAVEN, AND HART-
FORD RAILROAD COMPANY.

Hampden.    September 22, 1891. — October 26, 1891.

Present: ALLEN, KNOWLTON, MORTON, & BARKER, JJ.

*Personal Injuries — Railroad — Grade Crossing of Highway — Gross or
Wilful Negligence.*

In an action on the Pub. Sts. c. 112, § 213, against a railroad company for injuring
a woman, a foot traveller on the highway, at a grade crossing, there was evi-
dence that she was about seventy years old, of ordinary intelligence, with good
sight and hearing, and familiar with the locality; that she was at the time
going from her home to a store beyond the tracks to buy provisions; that the
weather was clear, and that about forty feet from the middle track, on which
she was struck, her view towards an approaching train was uninterrupted for
several hundred feet, and from that point extended as she neared the track;
that there was no gate or flagman at the crossing, and that the statutory sig-
nals were omitted by such train; that before and after entering upon the rail-
road she looked and saw no train; that when on the nearest track she heard
the noise of the train and the danger signals; and that, without looking up to
see where the train was, she tried to cross, became confused, and, falling upon
the rails, was injured.  *Held,* that the question whether she was guilty of gross
or wilful negligence was properly submitted to the jury.

TORT, for personal injuries occasioned to the plaintiff by being
struck by a locomotive engine at a crossing at grade of the de-
fendant's railroad and a highway in Westfield.  At the trial in
the Superior Court, *Dewey,* J., at the close of the evidence, re-
fused to rule, as requested by the defendant, (1) that " upon all
the evidence in the case the plaintiff cannot recover," (2) that
" the plaintiff was grossly negligent, and such negligence con-
tributed to her injury," and (3) that " there is no sufficient evi-
dence to warrant the jury in finding that the plaintiff was not
grossly negligent, or that her negligence did not contribute to
the injury "; and submitted the case to the jury upon instruc-
tions, to which no exception was taken.

The jury returned a verdict for the plaintiff ; and the defend-
ant alleged exceptions.  The nature of the evidence appears in
the opinion.

*G. D. Robinson,* for the defendant.
*J. B. Carroll,* for the plaintiff.

BARKER, J.    The plaintiff, a foot traveller on the highway, was struck by a locomotive at a grade crossing. The accident happened on a clear summer day, about eleven o'clock in the forenoon. The railroad had, within a short time before the accident, been raised so as to be about three feet higher than the level of the sidewalk on which the plaintiff approached from the east. The work of grading was unfinished, and the crossing was in a broken and poor condition, with one plank on each side of the rails. The ground was rough, so that teams had to walk across. There were three railroad tracks at the crossing, and the locomotive was on the middle track, coming from north to south. The plaintiff's line of travel was diagonally across the tracks. From the end of the sidewalk to the tracks the space was filled with soft gravel. The height of the car windows from the ground was seven feet, and from the level of the sidewalk, ten feet. A building and the branches of a butternut tree obstructed the view from the sidewalk. These were the only obstructions, looking northward, to a bridge, a distance of nine hundred and eighty-five feet from the place of the accident. After a person passed on to the line of the railroad from the sidewalk, there was no obstruction to his view except the branches of the tree, and after reaching the nearest track there was no obstruction. A person approaching the railroad in the plaintiff's line of travel could see in a clear line of vision from a point forty-two feet from the nearer rail of the middle track three hundred and fifty-two feet northward; at thirty-two and one half feet, nine hundred and eighty-five feet; at twenty-eight and one half feet, thirteen hundred and fifty-eight feet; and at twenty-three and one half feet, fourteen hundred and sixty-eight feet. There was no gate nor flagman at the crossing. The plaintiff lived in the vicinity, was familiar with the locality, and accustomed to pass over the crossing. She was between sixty and seventy years of age, of ordinary intelligence, and possessed of good sight and hearing.

The declaration was in two counts, the first under the Pub. Sts. c. 112, § 213. At the close of the evidence the court ruled that the plaintiff could not recover on the second count, which was at common law, and the jury found a verdict for the plaintiff on the first count, and found specially that the defendant

neglected to give the signals required by the statutes. The question raised by the bill of exceptions is, whether the court was justified in submitting the case to the jury upon the first count, or whether upon all the evidence it appeared, as matter of law, that the plaintiff, in addition to a mere want of ordinary care, was guilty of gross or wilful negligence.

In addition to the facts above stated, there was evidence tending to show that, if the plaintiff had looked at all before going on the track, she could have seen the approaching train a quarter of a mile away; that she was familiar with the passing of trains, and had often before run across ahead of the train; that she did not look up the track at all; and that shortly before she was struck by the locomotive, and before she had entered upon the middle track, and while she was yet in a place of safety, she had heard the sharp whistles, or " toot, toot, toot " of the engine, and knew that the train was coming at speed, and, notwithstanding this, attempted to cross in front of it. There was also evidence tending to show that before she left the sidewalk the train was actually in full view, approaching the crossing; that when she heard the danger whistles, she looked up directly at the train, and hurried up to get across, and tried to walk faster, and started to run ahead of the train; that when the danger whistle sounded she was between the east and middle tracks ; that she fell down before she was struck, and fell on the west rail of the middle track; that if she had stood still when the danger whistle sounded she would have been safe; and that she stumbled and fell on her knees and elbows, between the two rails of the middle track, and was struck by the train as she was trying to rise. One of the plaintiff's witnesses testified that he heard the danger whistles, turned his eyes to the crossing, and saw the old lady; that her hands were up in this manner (showing), and she made one step and down she went, and recovered herself to the extent of getting partially on her hands and knees.

The plaintiff herself testified that, before she went on the railroad track, she looked up and down and did not see any engine or train, and did not hear anything; that she started to go across the track; that the track was soft; that she heard a " big boo " coming, and did not know what it was, and did not know anything else that happened there. She said, upon

cross-examination, that she was going to the store to get some groceries, and had a pail in her hand, and wore a shawl and hood; that before she went on the track she looked here and there, up and down, and saw no train, but saw the bridge; that when she was on the sidewalk she looked, but saw no cars, and saw nothing until she heard the noise when the train came down; that when she got upon the track she looked, and saw no train, and did not see the train at all until she heard it coming; that she was on the first track when she heard the noise, and did not then look to see where the train was, but kept right on, and tried to clear the track; that she started to go right across just as fast as she could; that she did not look to see if the train was on the next track coming; that she did not hear the train until it was on her; that when she heard the noise the track was soft, and she started to run across, and fell down right on the track; that when she was on the first track she looked up and down, and did not hear the train; that before she went on the track she looked up and down, and did not see any train; and that she did not hear any sharp, short whistles, or any whistle at all.

The defendant introduced in evidence the whole testimony given by the plaintiff at a former trial of the case, in which she testified, upon cross-examination, that when she got right on the track she heard the "toot, toot, toot," just as it was right up to her; that it was the engine that made the noise, and that it scared her out of her senses; that when she heard the noise she was going back from the track, and started to run, and ran right on the track, and tumbled down on the track in front of the engine; that the noise that was in her head, and the train, and all that, took her senses right away; and that it was the first place in her life that she had not her senses.

It is plain, upon this evidence, that the plaintiff was not in the exercise of ordinary care. If she looked, as she testified that she did, and did not see the approaching train, she looked carelessly. If she looked and did see it, it was certainly not ordinary care to attempt to walk in front of it. If she did not look, her failure was, at least, a want of ordinary care. But a mere want of ordinary care would not defeat her recovery under the first count of her declaration, and the burden of proving

gross or wilful negligence rested upon the defendant. It is apparent that from the evidence a jury would be justified in finding that the plaintiff was in fact guilty, in addition to a mere want of ordinary care, of gross or wilful negligence. The evidence discloses no need or motive which would justify her in taking extraordinary risks. She was merely walking from her home to a neighboring store to purchase groceries. She was familiar with the crossing and its attendant dangers. If, as might be found from the evidence, she attempted in such circumstances to cross in full view of a rapidly approaching train, without looking to see whether or not danger was imminent, her negligence would be properly characterized as gross. If, knowing that the train was approaching at speed, and realizing the danger of attempting to cross in front of it, she understandingly and intentionally took the risk of so doing, without any other motive than to avoid waiting while the train passed, her negligence would be gross and wilful. *Copley* v. *New Haven & Northampton Co.* 136 Mass. 6. *Debbins* v. *Old Colony Railroad, ante,* 402. If situations similar to these, which plainly might have been found by the jury, are the only ones which could fairly and reasonably be found from the evidence, then it was the duty of the court to rule, as matter of law, that the plaintiff upon the evidence, was guilty of gross or wilful negligence, and to direct a verdict for the defendant. But, in our opinion, other inferences consistent with the theory that the plaintiff was guilty only of want of ordinary care may fairly be drawn from the evidence, and, if so, the court was right in submitting the question to the jury. The usual ringing of the bell and sounding of the whistle were omitted. If, before entering upon the railroad, the plaintiff looked up and down and saw nothing, and again when entering upon the east track looked and saw no train, it could not be said, as matter of law, that up to that point she was guilty of gross or wilful negligence in not having become aware of the approach of a train which came without the required and customary warning. If, when made aware of its approach by hearing the danger whistles, she was confused by the sudden peril, and went in front of the train because of her confusion, she could not be said to have been guilty of gross or wilful negligence. *Copley* v. *New Haven & Northampton Co.* 136 Mass. 6.

It is plain that either of the situations supposed, and perhaps others consistent with gross or wilful negligence, or with the want of it, may have been fairly found by a jury from the evidence. Under such circumstances it is the province of the jury to deal with the evidence under proper instructions from the court, which in this case were no doubt given.

*Exceptions overruled.*